Johnson J.
delivered the opinion of the Court.
The case stated, supposes, that the relator, Simon Moses, fraudulently possessed himself of certain slaves, the property of an intestate estate, when there had been no application for administration, nor any granted; and the question raised, is, whether *229 the ordinary was authorized under any circumstances, to issue process to the sheriff and his officers, commanding them to take the slaves out of the relator’s possession, and deliver them to another. It is not necessary to refer to Magna Charta, or our own constitution, for the rule, that no one shall be disseized of his freehold, despoiled of his goods, or deprived of liberty, ov life, without being heard: nor otherwise than according to the forms of law. It is a rule of common right, and in some shape or other is engrafted upon the constitution of every civilized country. That it has been violated in this instance, is too palpable to admit of any doubt. The slaves were in possession of the relator, who claimed them in his own right. If he possessed himself of them without right, he subjected himself to an action of trespass, trover, or detinue, at the suit of him who had the right. Of such action our Courts of common law had exclusive jurisdiction, and in them the right of trial by jury is secured by the constitution. And yet the ordinary has assumed the power of deciding the question of right against him; and without making him a party to the proceedings, has awarded process h deprive him of the possession.
It seems that by the ancient common law of England, the right of administering the goods of one dying intestate, belonged to the crown ; and it is said by the ancient writers, that the King was intitled to seize them, as parens patriae, and general trustee of the kingdom. 2 Bl. Com. 494. And it has been contended in support of the ordinary, that he has succeeded to this branch of the prerogative; and if no one will administer, it becomes a matter of duty in him to seize the goods, to preserve them for those who are intitled, and prevent their being eloigned or destroyed. The act of 1789, P. L. 472, prescribes the mode in which the ordinary may obtain administration, and it may be questioned, whether he has any power over the goods of an intestate estate, without administration. But I have not thought it necessary to this case, to consider that question; for if it be conceded, still that would not justify his using force to obtain possession, and of his own head to lay violent hands on whatever he may please to claim in right of the intestate. When the books say that the King may seize the goods, I do not understand it to authorize lawless violence, but a seizure according to the forms of law: and the fact that the books con *230 tain no memorial of a precedent for this most summary proceeding, is itself sufficient authority that none such ever was in use.
The necessity of using it as the means of protecting the rights of minors and others, under such like disabilities, has been resorted to in support of it. But that necessity can very rarely arise in practice. The stimulus of interest and humanity are generally found sufficient; and when these fail, the ordinary could not better manifest his paternal care over this unfortunate class of persons, than by administering himself, in the manner provided for in the act before referred to. If none of these should be found sufficient, then the minors are only in the same situation in this respect, that they are in relation to all other rights that devolve on them, or of which they are possessed. In any possible view this proceeding cannot be sustained. The motion is therefore granted; and it is ordered that a prohibition do issue, to restrain the execution of the process set out in the proceedings.
Prohibition granted.